# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**GLOBAL GARLIC, INC.**

    **Plaintiff**

**vs.**                                          **Civ. No. JKB-21-1487**

**DISTRIBUIDORA MI HONDURAS,**
**LLC, et al.**

    **Defendants**

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM

In this case, Plaintiff/Counter-Defendant Global Garlic, Inc. ("Global Garlic") alleges that Defendants/Counter-Plaintiffs Distribuidora Mi Honduras, LLC and its founder and CEO, Omar Cerna Rubinstein, (collectively, "DMH") have violated the Lanham Act (the "Act") and have infringed upon Global Garlic's registered trademarks. Global Garlic brings two counts under the Act: infringement of Global Garlic's trademarks in violation of 15 U.S.C. § 1114 (Count I) and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) (Count II). (Compl. ¶¶ 39–49, ECF No. 1.) DMH brings three counterclaims against Global Garlic: declaratory judgment of invalidity, non-infringement, and/or unenforceability of Global Garlic's trademark registrations (Count I); declaratory judgment of no false designation of origin (Count II); and a petition to cancel Global Garlic's trademark registrations (Count III). (Countercl. ¶¶ 19–37, ECF No. 26.) Currently pending before the Court is Global Garlic's Motion to Dismiss Count III of DMH's Counterclaims. (Mot. Dismiss, ECF No. 30.)

I.      **Background**[1]

Global Garlic alleges that it owns certain registered trademarks, registered on the Principal Register, and that Global Garlic uses such marks in connection with its sale of hot sauce products. (Compl. ¶¶ 12, 17.) Global Garlic alleges that it has used such the marks since December 2015 and that it "owns valid and subsisting federal statutory and common law rights" to them. (Compl. ¶¶ 14–15.) Global Garlic's two trademarks—one for the language "Jutiquile Sabor Olancho" (Reg. No. 4,909,975) and one for a mark consisting of a square with the language "Jutiquile Sabor Olancho Hot Sauce" with a yellow, green, and red design (Reg. No. 5,048,369)—were registered on March 1, 2016 and September 27, 2016, respectively. (ECF No. 1-2.) The gravamen of Global Garlic's allegations is that DMH has sold hot sauce products bearing marks that are confusingly similar to these registered marks. (*Id.* ¶¶ 22–23.) DMH filed a Counterclaim seeking, *inter alia*, cancellation of Global Garlic's trademark registrations (Count III). (Countercl. ¶¶ 33–37.)

First, DMH seeks cancellation of Global Garlic's trademark registrations on the basis of fraudulent procurement. (*Id.* ¶¶ 33–37.) DMH alleges that Global Garlic has included the following false statements in its trademark applications for the purpose of achieving trademark registration: (1) "[t]he wording JUTIQUILE and OLANCHANO has no meaning in a foreign language" (and the near-identical statement "[t]he word(s) JUTIQUILE and OLANCHANO has no meaning in a foreign language") and (2) "to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of such other person, to cause confusion or mistake, or to deceive." (*Id.* ¶¶ 11, 16.)

---

[1]     In this section, the Court primarily recites the facts as alleged by DMH but includes some background from Global Garlic's Complaint for clarity. However, the facts are construed in the light most favorable to DMH. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

DMH explains that the first statement is false because "Jutiquile" and "Olanchano" refer to geographical places in Honduras. (*Id.* ¶ 12.) DMH alleges that Global Garlic is aware of this meaning, as its website references the "Olancha meadow." (*Id.* ¶ 14.) DMH also cites to internet articles explaining that Olancho is a department in Honduras and that Jutiquile is a region within Olancho. (*Id.* ¶ 15.) DMH alleges that these falsehoods are material because the Act provides that terms that are "primarily geographically descriptive" cannot be registered as trademarks. (*Id.* ¶ 13 (citing U.S.C. § 1052(e)).) DMH alleges that the second statement regarding prior users of the mark is "knowingly false" and that Global Garlic "merely copied, from another entity, the marks and the label and design to be registered." (*Id.* ¶ 17.)

Second, DMH argues that Global Garlic's trademarks are also subject to cancellation because the terms "Jutiquile" and "Olanchano" are primarily geographically descriptive and are thus not subject to registration. (*Id.* ¶¶ 35–36.)

## II.     Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'

Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

Further, fraud claims are subject to a heightened pleading standard, as set forth in Federal Rule of Civil Procedure 9(b). Under this Rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Those circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

## III.      Analysis

In support of its Motion to Dismiss, Global Garlic argues that DMH (1) failed to plead fraud with the requisite particularity with respect to the two allegedly fraudulent statements and (2) failed to sufficiently plead that the trademarks are geographically descriptive. (*See generally* Mot. Dismiss Mem. Supp., ECF No. 30.) For the reasons set forth below, the Court will grant in part and deny in part the Motion to Dismiss.

### A.      Fraudulent Procurement

The Act gives federal courts the authority to cancel an invalid trademark registration. The Act specifies that, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. "A mark shall be canceled if its registration was fraudulently obtained." *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 420 (4th Cir. 1998); *see also* 15 U.S.C. § 1064 (explaining that a party may file a petition to cancel the registration of a mark if "registration was obtained

4

fraudulently"). For a registration to have been fraudulently obtained, the applicant must have "knowingly made false, material representations of fact and intended to deceive the [USPTO]." *Pinehurst*, 148 F.3d 420 (citations, quotations, and alterations omitted).

### 1.   Meaning in a Foreign Language

The first statements that DMH alleges were fraudulent are: "[t]he wording JUTIQUILE and OLANCHANO has no meaning in a foreign language" and "[t]he word(s) JUTIQUILE and OLANCHANO has no meaning in a foreign language." (Countercl. ¶ 11.) DMH alleges that Global Garlic made these false statements for the purpose of achieving trademark registration and that Global Garlic's website indicates that the peppers used in its hot sauce are "cooked and matured in the Olancha meadow." (*Id.* ¶¶ 14–15.) DMH explains that this alleged falsehood is material because primarily geographically descriptive terms cannot be registered. (*Id.* ¶ 13 (citing 15 U.S.C. § 1052(e)).) Global Garlic does not dispute that it understood the meaning of these words. Rather, it argues that because "Olancho" and "Jutiquile" are proper nouns for locations in Honduras, these terms have no meaning in a foreign language and, thus, the statements were not false. (Mot. Dismiss Mem. Supp. at 3–4.)

As explained above, if a trademark was obtained fraudulently, it may be cancelled. In particular, "if a geographically descriptive term that lacks secondary meaning is trademarked as a result of the applicant's failure to reveal the geographical description to the [US]PTO, or if the applicant makes a material misrepresentation of the term's definition, the trademark registration has been procured by fraud and may be canceled at any time." *Daesang Corp. v. Rhee Bros.*, Civ. No. AMD-03-551, 2005 WL 1163142, at \*8 (D. Md. May 13, 2005).

DMH plausibly alleges that these statements were false, or at least that they contained material omissions. Global Garlic argues that "[b]ecause 'Olancho' and 'Jutiquile' are proper

nouns for locations also used in English, they do not fall within the scope of what the [USPTO] considers having a meaning in a foreign language." (Mot. Dismiss Mem. Supp. at 3.) Global Garlic does not cite authority to support this contention.[2] While it is true that the terms are proper nouns—and thus, that they may not have a meaning in a foreign language *distinct from their English meaning*—it is not true that they have *no* meaning in a foreign language. DMH has therefore plausibly alleged that the statement is false. Further, this allegedly false statement is material, as terms that are primarily geographically descriptive are not entitled to trademark protection unless they have acquired secondary meaning. *See* 15 U.S.C. § 1052(e).

DMH also plausibly alleges that Global Garlic made these false statements knowingly and with the intent to deceive the USPTO. DMH provides the meanings of the terms, and alleges that Global Garlic's website indicates that the peppers in its hot sauce are from the "Olancha meadow." (Countercl. ¶¶ 14–15.) DMH also alleges that Global Garlic made these statements with intent to deceive the USPTO. (Countercl. ¶¶ 10–11.) For purposes of a motion to dismiss, "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison*, 176 F.3d at 784.

The Court therefore concludes that DMH has sufficiently alleged fraudulent procurement with respect to these statements, as DMH has sufficiently alleged that Global Garlic made

---

[2]      Global Garlic instead points to a third party's registration for the mark "OLANCHO" in connection with a certain type of cheese for the proposition that the terms "Olanchano" and "Jutiquile" have no meaning in a foreign language. Global Garlic explains that the USPTO examining attorney "was aware of the geographic meaning" of the term "Olancho" and that, "[a]s shown on the OLANCHO certificate, the applicant was not required to state that 'Olancho' has a meaning in foreign language." (Mot. Dismiss Mem. Supp. at 3.) Unlike the third party at issue in that application, Global Garlic did indeed state that both "Olanchano" and "Jutiquile" have no meaning in a foreign language. It is this statement that DMH alleges was fraudulent. In addition, upon a closer inspection of the third party application, it appears that the USPTO examining attorney was concerned about the potential *misdescriptive* nature of the term, as the cheese did not originate from Olancho. Finally, that a USPTO examining attorney was aware of the geographic meaning of the term "Olancho" does not foreclose the conclusion that the terms "Olanchano" or "Jutiquile" have meaning in a foreign language, nor does it necessitate the conclusion that the USPTO examining attorney who approved Global Garlic's applications was aware of the meaning.

materially false statements and/or omissions and that Global Garlic did so knowingly and for

purposes of obtaining the at-issue trademarks. *See Can. Pipeline Accessories, Co. v. Canalta

Controls, Ltd.*, Civ. No. 3:12-8448, 2013 WL 3233464, at *7 (S.D.W. Va. June 25, 2013) (finding

that a claimant sufficiently stated a claim for trademark cancellation based on fraud where it

alleged that: (1) the registrant "falsely represented that the term '50E' lacked any significance in

the relevant trade or industry or as applied to the goods; (2) "this representation was material to

the issuance of the trademark"; and (3) the registrant "made this false representation with intent to

deceive PTO"); *For Life Products, LLC v. Universal Cos., Inc.*, Civ. No. 20-0016, 2021 WL

2953170, at *5 (W.D. Va. July 14, 2021) ("What is relevant at this juncture is that the First

Amended Complaint contains sufficient allegations to plausibly infer that [the registrant's]

disclaimer was false, material and made to deceive the USPTO.")

### 2.    Prior User

The second statement DMH argues was fraudulent is Global Garlic's statement that "to the

best of the signatory's knowledge and belief, no other person has the right to use the mark in

commerce, either in the identical form or in such near resemblance as to be likely, when applied

to the goods or services of such other person, to cause confusion or mistake, or to deceive."

(Countercl. ¶ 16.)   To sufficiently state a claim for fraudulent procurement based on this

representation, DMH must allege that:

> (1) there was in fact another user of the same or a confusingly similar mark at the
> time the oath was signed; (2) the other user had legal rights superior to [Global
> Garlic's]; (3) [Global Garlic] knew that the other user had superior rights in the
> mark; and that (4) [Global Garlic], in failing to disclose these facts to the [USPTO],
> intended to procure a registration to which it was not entitled.

*Mil. Ord. of Purple Heart Serv. Found., Inc. v. Others First, Inc.*, Civ. No. GLR-12-1483, 2012

WL 6761816, at *2 (D. Md. Dec. 28, 2012) (alterations omitted) (citing *Intellimedia Sports, Inc.*

*v. Intellimedia Corp.*, 43 U.S.P.Q.2d 1203, 1206 (T.T.A.B.1997)); *see also MC1 Healthcare LLC*

7

*v. Mountainside Sols., Inc.*, Civ. No. 18-00315-MR, 2020 WL 1923163, at *8 (W.D.N.C. Apr. 21, 2020) (same).  DMH has not sufficiently alleged fraudulent procurement with respect to this statement.  Its fraudulent procurement claim based on this statement will therefore be dismissed.

DMH's only facts supporting its fraudulent procurement claims with respect to this statement is that "Global Garlic withheld the information from the USPTO that Global Garlic had merely copied, from another entity, the marks and the label and design sought to be registered, and that its above statement under oath was knowingly false."  (Id. ¶ 17.)  Nowhere in its pleadings does DMH specify who this "other entity" is, what marks this other entity used, or any facts regarding this other entity's prior (let alone superior) use of the marks.[3]  This is insufficient to state a claim of fraudulent procurement.

## B.   Geographic Descriptiveness

Finally, DMH argues that Global Garlic's trademarks should also be cancelled because the trademarks are "primarily geographically descriptive of the source of origin of the goods stated therein."  (Countercl. ¶ 36.)  Global Garlic argues that DMH has failed to sufficiently allege that "Jutiquile" and "Olanchano" are primarily geographically descriptive.  (Mot. Dismiss Mem. Supp. at 6.)  DMH's cancellation claim based on geographic descriptiveness will be dismissed.[4]

---

[3]      DMH provides some additional factual assertions in its briefing—including that Global Garlic "merely copied the marks (and, shockingly, even the complete trade dress label) from the long-prior using third-party, ALCON" (Opp'n to Mot. Dismiss at 1, ECF No. 31)—but it is well established that this Court cannot consider facts raised outside of the pleadings in considering the Motion to Dismiss. *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.").

[4]      Although neither party raises the issue and it is not a basis for dismissal of this claim, the Court notes that it appears that Global Garlic's trademarks were registered on March 1, 2016 and September 27, 2016 (ECF No. 1-2), and that DMH filed its Counterclaim (including its petition to cancel Global Garlic's trademarks) over five years from either of these two dates, on October 6, 2021.  15 U.S.C. § 1064, which provides the grounds for cancellation of a trademark, "separates valid grounds for cancellation into those that can only be raised within five years of a mark's registration, and those that can be raised at any time."  *Seawright v. M. Shanken Commc'ns, Inc.*, Civ. No. JKB-14-1326, 2014 WL 4258311, at *3 (D. Md. Aug. 26, 2014), aff'd sub nom. *Seawright v. M. Shanken Commc'ns*, 594 F. App'x 132 (4th Cir. 2015).  Absent another statutory grounds, such as fraud, the argument that a mark is primarily geographically descriptive is grounds for cancellation only within the first five years of a mark's registration.  *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 20:49 (5th ed. 2019).

Marks that are primarily geographically descriptive and that have not acquired a secondary meaning are not entitled to trademark protection. *In re The Newbridge Cutlery Co.*, 776 F.3d 854, 859 (Fed. Cir. 2015) (citations and internal quotations omitted) (explaining that the Act prohibits the registration of marks if "when applied to the goods of the applicant it is primarily geographically descriptive or deceptively misdescriptive of them," but that such marks could be registered "if they acquired distinctiveness"). To allege that a mark is primarily geographically descriptive, "the plaintiff must allege that (1) the primary significance of the mark is the name of a place that is generally known to the public; (2) the goods or services originate in the place identified in the mark; and (3) the relevant purchasers would associate the identified goods or services with the place named, i.e., the public would believe that the goods or services come from the place named." *Win Luck Trading, Inc.*, No. 9206141, 2016 WL 1677318, at *3 (TTAB Jan. 19, 2016) (citations omitted).

Although DMH has alleged that the hot sauce originates from the Olancha meadow and thus plausibly alleges the second factor above, it has not included any allegations regarding the public perception of Jutiquile or Olanchano and thus has not sufficiently alleged that the "primary significance of the mark is the name of a place that is generally known to the public" or that "the relevant purchasers would associate the identified goods or services with the place named." DMH's cancellation claim on this basis will therefore be dismissed.

## IV.    Conclusion

For the reasons set forth in the foregoing Memorandum, Global Garlic's Motion to Dismiss (ECF No. 30) will be granted in part and denied in part. It will be granted insofar as it seeks dismissal of DMH's cancellation claim based on (1) the allegedly fraudulent statement regarding a prior user of the marks and (2) the primarily geographic descriptiveness of the marks. It be will

9

denied insofar as it seeks dismissal of DMH's cancellation claim based on the allegedly fraudulent statements regarding the marks' meaning in a foreign language.

DATED this _10_ day of February, 2022.

BY THE COURT:

James K. Bredar
Chief Judge